IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHRYN MEGONNELL, : | |
| : | |
| Plaintiff, : | Civil Action No. 1:07-cv-02339 |
| : | (Chief Judge Kane) |
| v. : | |
| : | |
| INFOTECH SOLUTIONS, INC. t/d/b/a : | |
| AVYSION IT and/or AVYSION : | |
| HEALTHCARE SERVICES, PAMELA : | |
| HUNTER AND LEONARD TOKAR, : | |
| : | |
| Defendants : | |

## MEMORANDUM

Before the Court is a motion for a protective order by non-party White Deer Run, Inc. ("White Deer"). (Doc. No. 26.) The motion is opposed by Defendants Infotech Solutions, Inc. and Leonard Tokar ("Defendants") and by Plaintiff. (Doc. Nos. 28, 30.) For the reasons explained below, the Court will grant White Deer's motion and quash Defendants' subpoena.

## I.     BACKGROUND

Plaintiff Kathryn Megonnell filed suit against Infotech Solutions, Inc., Pamela Hunter, and Leonard Tokar on December 28, 2007. Plaintiff claims that the Defendants violated the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et seq., by interfering and retaliating against her attempt to take FMLA leave to address the involuntary discharge of her niece Kylee Johnson Davis ("K.D.") from White Deer, a drug and alcohol rehabilitation center. (Doc. No. 1.) Plaintiff alleges that she stood *in loco parentis* to her niece, who was suffering from a "serious health condition" within the meaning of the FMLA.

On September 8, 2008, Defendants served a subpoena on White Deer to produce K.D.'s

1

rehabilitation records. (Doc. No. 21, Ex. A.) White Deer objected to the request on the basis that Pennsylvania law did not allow them to release any information "without a good cause court order." (Doc. No. 21, Ex. B.) On October 23, 2008, Defendants filed a motion to enforce the subpoena against White Deer and to require them to produce the requested documents. (Doc. No. 21.) On October 28, 2008, the Court issued an order requiring White Deer to produce any and all records associated with K.D.'s care or treatment. (Doc. No. 23.)

In response to the court order, White Deer has motioned for a protective order on the grounds that the production of the requested information potentially subjects White Deer to criminal and/or civil liability. (Doc. No. 27 at 2-3.) White Deer argues that, as a drug and rehabilitation center, and pursuant to federal law under the Public Health Service Act, 42 U.S.C. § 290dd-2, it cannot release patient records except as expressly authorized by federal regulations. See 42 C.F.R. § 2.13.

Both Defendants and Plaintiff have filed briefs in opposition to White Deer's motion for a protective order (Doc. Nos. 28, 30). Defendants argue that since the health and treatment of K.D. is directly at issue in the current litigation, White Deer is compelled to produce the documents so Defendants may review the seriousness of K.D.'s medical condition. (Doc. No. 28 at 2-3.) Defendants also argue that a failure to require production of documents relating to K.D.'s medical condition severely prejudices Defendants since they will be precluded from evaluating a prima facie element of Plaintiff's claim. (Doc. No. 28 at 10.) Plaintiff argues that good cause exists for the disclosure of K.D's treatment records, but emphasizes that the Court should apply appropriate safeguards for disclosure of the documents. (Doc. No. 30.)

## II. DISCUSSION

"[D]iscovery disputes in federal courts are governed by federal law . . . ." Pearson v. Miller, 211 F.3d 57, 61 (3d Cir. 2000). The discovery rules regarding the production of documents are governed by Rules 34 and 45 of the Federal Rules of Civil Procedure. Rule 34(c) states that, "[a]s provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection." Fed. R. Civ. Pro. 34(c). Rule 45(c) outlines the protections that are given to non-parties against the liberal discovery disclosure requirements, and directs that an issuing court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]" Fed. R. Civ. Pro. 45(c)(3)(A)(iii).

The documents at issue in this case are treatment records that may be in the possession of White Deer as a result of any treatment K.D. incurred as a patient. Both parties agree that the documents that Defendants have requested are clearly relevant to the matter at hand. Yet, even if they are relevant, the Court must quash or modify the subpoena if it requires disclosure of information that is privileged or protected by law. See Pearson, 211 F.3d at 61 (noting whether evidence is discoverable turns on whether "federal law recognizes one or more applicable evidentiary privileges, or [whether] federal law otherwise provides for the protection of the information"). Therefore, the Court must determine: (1) whether the records held by White Deer are privileged or protected and (2) if they are protected, whether an exception or a waiver applies.

### A. The documents requested are protected by federal statute.

No federal privilege has yet been recognized for a patient's drug and alcohol abuse records. Because White Deer does not assert that such a privilege exists, and because the Court

3

finds that the records at issue are otherwise protected under federal law, the Court need not address further whether such a privilege should be created.

Under federal law, disclosure of medical records relating to the treatment of drug and alcohol abuse patients in federally funded treatment programs is governed by 42 U.S.C. § 290dd-2 ("Public Health Service Act"). 42 U.S.C. § 290dd-2(a) states in pertinent part:

> Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall . . . be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section.

42 U.S.C. § 290dd-2(a). "Subsection (b) of section 290dd-2 essentially limits permissible disclosure to: (1) occasions when there is consent; absent consent, (2) in a medical emergency; (3) for scientific research; or (4) by court order." Carr v. Allegheny Health, Education and Research Foundation, 933 F. Supp. 485, 487 (W.D. Pa. 1996) (citing 42 U.S.C. § 290dd-2(b)(1), (2)). Of the four options, the two contemplated in this case would be consent from K.D., which has not been given, or a court order. However, "[a] court order is contemplated only under narrow circumstances." Id. A court must make a finding of good cause before ordering disclosure:

> If authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor, including the need to avert a substantial risk of death or serious bodily harm. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure.

42 U.S.C. § 290dd-2(b)(2)(C). The party seeking disclosure bears the burden of establishing "good cause." Fannon v. Johnston, 88 F. Supp. 2d 753, 757 (E.D. Mich. 2000) (citing United States v. Cresta, 825 F.2d 538, 552 (1st Cir. 1987))

To guide application of the statute, subsection 290dd-2(g) directs the Secretary of Health and Human Services to prescribe regulations to carry out the purposes of the statute. The HHS Secretary has promulgated such regulations at 42 C.F.R. §§ 2.1-2.67 (1995).[1] According to the regulations, in order to make a finding of "good cause," a court must find that: (1) "Other ways of obtaining the information are not available or would not be effective," and (2) "The public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services." 42 C.F.R. § 2.64(d).

In addition, the regulations provide that "[a] court order under these regulations may authorize disclosure of confidential communications made by the patient to a program in the course of diagnosis, treatment, or referral for treatment only if" one of three conditions is met: (1) a threat to life or limb, or of child abuse; (2) prosecution of "an extremely serious crime" such as homicide, rape, or assault; or (3) litigation "in which the patient offers testimony or other evidence pertaining to the content of the confidential communications." 42 C.F.R. § 2.63(a)(1), (2), (3).

---

[1] The regulations state in pertinent part, that:

[t]he patient records to which these regulations apply may be disclosed or used only as permitted by these regulations and may not otherwise be disclosed or used in any civil, criminal, administrative, or legislative proceedings conducted by any Federal, State, or local authority.

42 C.F.R. § 2.13(a).

None of the preconditions for disclosure by court order are met in the present case. This case, brought pursuant to the FMLA, does not deal with threats to life or limb, child abuse, or an extremely serious crime such as homicide or rape. See 42 C.F.R. § 2.63(a)(1), (2). Neither is this a case where a litigant-patient has put the confidential communications at issue by "offer[ing] testimony or other evidence pertaining to the content of the confidential communications." See 42 C.F.R. § 2.63(a)(3). Therefore, this is not an instance that warrants this Court's issuing an order compelling discovery.

As further support, the Court notes that the federal regulations make clear that they are not to preclude state law that give greater protection to a patient's rehabilitation records.[2] Specifically, 42 C.F.R. § 2.20 provides:

> The statutes authorizing these regulations (42 U.S.C. 290ee-3 and 42 U.S.C. 290dd-3) do not preempt the field of law which they cover to the exclusion of all State laws in that field. If a disclosure permitted under these regulations is prohibited under State law, neither these regulations nor the authorizing statutes may be construed to authorize any violation of that State law. . . .

42 C.F.R. § 2.20. In this instance, the Pennsylvania Drug and Alcohol Abuse Control Act, 71 P.S. § 1690.108(c) is even more restrictive than federal law.[3] Subsection 1690.108(c) states:

---

[2] The state statutory confidentiality provisions that have been invoked by White Deer govern the present dispute "to the extent that federal law may recognize the force of those provisions . . . ." Pearson, 211 F.3d at 61 (stating that "[t]he ultimate issue is whether the discovery sought is permitted as a matter of federal law").

[3] Plaintiffs assert that the applicable subsection is 71 P.S. § 1690.108(b) which states that "[d]isclosure may be made for purposes unrelated to such treatment or benefits only upon an order of a court of common pleas after application showing good cause therefor." 71 P.S. § 1690.108(b). Under § 1690.108(b), a court is directed to "weigh the need for the information sought to be disclosed against the possible harm of disclosure to the person to whom such information pertains, the physician-patient relationship, and to the treatment services, and may condition disclosure of the information upon any appropriate safeguards." 71 P.S. § 1690.108(b).

6

> All patient records and all information contained therein relating to drug or alcohol abuse or drug or alcohol dependence prepared or obtained by a private practitioner, hospital, clinic, drug rehabilitation or drug treatment center shall remain confidential and may be disclosed only with the patient's consent and only (i) to medical personnel exclusively for purposes of diagnosis and treatment of the patient or (ii) to government or other officials exclusively for the purpose of obtaining benefits due the patient as a result of his drug or alcohol abuse or drug or alcohol dependence except that in emergency medical situations where the patient's life is in immediate jeopardy, patient records may be released without the patient's consent to proper medical authorities solely for the purpose of providing medical treatment to the patient.

Thus, Pennsylvania law allows disclosure of a patient records relating to drug or alcohol abuse only where there is the patient's consent and only to "medical personnel exclusively for . . . treatment of the patient" or to other officials exclusively to benefit the patient in "emergency medical situations where the patient's life is in danger." 71 P.S. § 1690.108(c).

The rehabilitation records at issue in this case fall squarely under the ambit of 42 U.S.C. § 290dd-2(a) and are due the protection of this Court. This finding is further supported by the federal regulation's directive that federal protection is not to preclude state law, which, in the present case, provides even greater protection for the records at issue.

### B. No exception or waiver is applicable.

The issue then becomes whether the records may be ordered disclosed pursuant to an exception or a waiver. Defendants correctly point out that courts have held that there is an implied waiver under 71 P.S. § 1690.108(c) when a plaintiff puts their own medical records at issue. See, e.g., O'Boyle v. Jensen, 150 F.R.D. 519, 521-22 (M.D. Pa. 1993) ("It has long been

---

However, Plaintiff's reliance on subsection 1690.108(b) is misplaced since the Pennsylvania Drug and Alcohol Abuse Control Act includes subsection 1690.108(c), a rule specifically for protecting medical records relating to drug or alcohol abuse treatment.

7

established that the privilege of confidentiality in medical records 'evaporates' when the patient brings a personal injury action which calls into question his physical or mental condition"). It would be unfair for a plaintiff to put their own physical or mental condition at issue and then allow them to hide behind a rule of confidentiality that is created by statute. See id. (holding that an administratix, acting on behalf of the deceased, could not claim privilege over the deceased's medical records since the privilege was waived by the filing of the wrongful death lawsuit which put the deceased's mental and physical health at issue).

In this case, however, there has been no waiver by the consent of K.D., a non-party. Although the parties argue that Plaintiff placed K.D.'s treatment at White Deer at issue by filing this lawsuit, their arguments miss the mark. Cases like O'Boyle, where courts have found that confidentiality protections over drug or alcohol treatment records have been waived, are those in which the plaintiff's own medical records are at issue.[4] Those concerns are not aligned with the facts in this case, where K.D. is not a plaintiff. Therefore, it cannot be said that K.D. waived the confidentiality protections intended for her by law.

## III. CONCLUSION

The federal statute governing drug and alcohol rehabilitation records directs that the records are to remain confidential, absent consent or court order. In this case, no consent has been given by K.D., and the standards for a court order have not been met. Since K.D. is not a

---

[4] In O'Boyle the lawsuit was brought by an administratix individually and on behalf of the deceased. 150 F.R.D. at 520. As such, the plaintiff stood in the place of the deceased and was in a position to assert the same rights and privileges as if the deceased were still alive. See 20 Pa. Cons. Stat. Ann. § 3373 ("An action or proceeding to enforce any right or liability which survives a decedent may be brought by or against his personal representative alone or with other parties as though the decedent were alive.").

party to this action it cannot be said that she has waived the protections offered to her. Therefore, the Court will grant White Deer's motion for a protective order and quash Defendants' subpoena. An order consistent with this memorandum follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| KATHRYN MEGONNELL, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 1:07-cv-02339 |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| INFOTECH SOLUTIONS, INC. t/d/b/a | : | |
| AVYSION IT and/or AVYSION | : | |
| HEALTHCARE SERVICES, PAMELA | : | |
| HUNTER AND LEONARD TOKAR, | : | |
| | : | |
| Defendants | : | |

## ORDER

**AND NOW**, on this 18th day of November 2009, upon consideration of White Deer Run, Inc.'s motion for a protective order (Doc. No. 26), the motion is **GRANTED**. It is hereby **ORDERED** and **DIRECTED** that the subpoena issued on behalf of the Defendants, Infotech Solutions, Inc. and Leonard Tokar, on White Deer Run, Inc. be quashed.

    S/ Yvette Kane
    Yvette Kane, Chief Judge
    United States District Court
    Middle District of Pennsylvania
    Dated: November 18, 2009